IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-1888

**MELANIE H. YOUNG**

        Plaintiff,

v.

**TRANSAMERICA LIFE INSURANCE COMPANY**

        Defendant.

_____

### COMPLAINT AND DEMAND FOR A JURY TRIAL

_____

        Plaintiff, Melanie Young ("Ms. Young"), by her undersigned counsel, files this Complaint against Transamerica Life Insurance Company ("Transamerica"), alleging as follows:

### <u>PARTIES</u>

        1.     At all times to the allegations contained herein, Ms. Young was a citizen of the United States of America and a resident of the State of Colorado.

        2.     Ms. Young was hired as an employee of Transamerica on May 15, 2017.

        3.     On March 5, 2019 Transamerica terminated the employment of Ms. Young.

        4.     At all times material hereto, Ms. Young was an employee within the meaning of 42 U.S.C. § 2000e(f).

        5.     Consistent with the protections under Title VII and 42 U.S.C. §1981, Ms. Young is a member of protected classes based on her race/color (African-American/Black) and sex (female).

        6.     Transamerica is corporation domiciled in the State of Iowa.

7.    Transamerica is authorized to conduct business in the State of Colorado through proper registrations with the offices of the Colorado Division of Insurance and the Colorado Secretary of State.

8.    Transamerica's principal offices are 4333 Edgewood Rd, NE, Cedar Rapids, Iowa.

9.    At all times material hereto, Transamerica was an employer in the State of Colorado within the meaning of 42 U.S.C. § 2000e(b).

## I.    JURISDICTION AND VENUE

10.    This Court has original jurisdiction of the subject matter of the allegations contained in this Complaint pursuant to 28 U.S.C. §§ 1331, 1332, 1334 and through Ms. Young's assertion of rights under 42 U.S.C. § 2000e-5(f)(3), 42 U.S.C. §1981. Ms. Young asserts this Court has supplemental jurisdiction over her state law claims pursuant to 28 U.S.C. § 1367.

11.    The acts complained of herein were committed or had their principal effect within the District of Colorado, and therefore, venue for this civil action is proper pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-(f)3.

## II.    ADMINISTRATIVE PROCEDURE

12.    Ms. Young has fully complied with all administrative prerequisites of jurisdiction in this Court under Title VII.

13.    On April 24, 2019 Ms. Young filed a Charge of Discrimination with the Colorado Civil Rights Division ("CCRD") and the Equal Employment Opportunity Commission ("EEOC"), Charge Number FE2019709688.

2

14.     On or about July 31, 2019 Ms. Young filed an Amended Charge of Discrimination with the CCRD.

15.     On March 31, 2020, the CCRD issued a Determination in charge number FE2019709688.

16.     The CCRD Determination found probable cause of discrimination on Ms. Young's claims of discriminatory discipline, discharge, and retaliation.  The CCRD Determination found no probable cause on Ms. Young's discriminatory failure to promote claim.

17.     As to the no probable cause finding on Ms. Young's claim of discriminatory failure to promote, the CCRD Determination issued a Notice advising Ms. Young she had the right to file a civil action in a District Court within 90 days from March 31, 2020.

18.     Ms. Young has exhausted all administrative remedies and this action is timely filed.

### III.     FACTUAL ALLEGATIONS

19.     Ms. Young incorporates by reference and re-alleges each and every allegation set forth in the preceding paragraphs with the same force and effect as if fully set forth herein.

20.     Ms. Young holds a bachelor's degree, a master's degree, and an MBA from the University of Cincinnati.

21.     Ms. Young holds a Series 6 and Series 63 certification from the Financial Industry Regulations Authority.

22.     Ms. Young has 13 years of sales management experience prior to her employment with Transamerica.

23.     Transamerica hired Ms. Young as a Life Insurance Internal Wholesaler.

24.     Ms. Young was hired by Taylor Gorjiyan ("Ms. Gorjiyan"), Director of Human Resources, who is a white female.

25.     Ms. Young was placed under the direct supervision of Dave Kriz ("Mr. Kriz"), Assistant Vice President, who is a white male.  Mr. Kriz was a direct report to Ms. Gorjiyan.

26.     Internal Wholesalers at Transamerica are partnered with Regional Vice Presidents ("RVP's" or "RVP").

27.     The Internal Wholesaler and RVP work together to develop new business.

28.     Internal Wholesalers engage with current and potential clients through phone and web-based services.

29.     Part of Ms. Young's job duties were to develop new business for Transamerica, maintain client relationships, set up appointments, make sales calls and support RVP's.

30.     At all times material hereto, Ms. Young satisfactorily performed her job duties Life Insurance Internal Wholesaler.

31.     During 2017, Ms. Young observed the unequal application of Transamerica's attendance policies.  She was given a verbal written warning for attendance on November 20, 2019.  However, similarly situated white male employees were not disciplined for attendance policy violations, nor were they disciplined for committing other serious policy violations that required immediate termination of their employment.

32.     Throughout 2017 and 2018, Ms. Young continued to observe disparate treatment against women and employees of color.  Ms. Young observed a male employee receive raises and not be disciplined, who continually was absent from work and habitually late for work and who consumed alcohol on the job.  Conversely, Ms. Young was denied a salary increase.

33.     Ms. Young requested a schedule change to accommodate a health issue, but was denied.  A similarly situated white male was permitted to change his schedule to train for a job outside of his employment with Transamerica.

34.     In May 2017, at the time Ms. Young's employment commenced, she observed that the external wholesaler team was made up of seven (7) RVP positions.  In May 2017 there were two (2) open positions, with two (2) white females RVP's and three (3) white male RVP's. Under the management of Steve Weber ("Mr. Weber") and Dave Coughlin ("Mr. Coughlin"), both white males, the RVP team was expanded to 13 RVP positions. Under this same Weber/Coughlin management team, the two (2) white females were no longer employed as RVP's.  Subsequently, the eight (8) open RVP positions (from about March 2018 to March 2019) were filled with all white males that were hired from outside of Transamerica.  Upon information and belief, few, if any, had a degree in Master of Business Administration.

35.     On January 2, 2018, Transamerica restructured the Life Insurance Group based on geographic boundaries.  Ms. Young was placed under the direct supervision of Lillian Hodges ("Ms. Hodges"), Assistant Vice President, who is a Filipino female.

36.     Under Ms. Hodges's supervision, Ms. Young continued to satisfactorily perform her job duties and excelled at her job.

37.     On or about August 2018, the job position of Vice President Internal Sales, previously held by Ms. Gorjiyan, was filled by Russ Winchester ("Mr. Winchester"), a white male.

38.     Throughout 2018, at team and sales meetings, Ms. Young and others observed the discriminatory treatment of Ms. Hodges by the white male leadership, particularly Mr. Winchester.

5

**Ms. Young Applies for Promotions for Which She is Qualified**

39.      In December of 2017, the RVP position on Ms. Young's team for the State of California, was vacated by a white female.

40.      In January 2018, Ms. Young applied for the RVP position in the State of California.  She was recommended by Michael Kiefer ("Mr. Kiefer") to Mr. Coughlin, for the position. She had an initial interview with Mr. Weber for the position and was told she would be interviewed for the position.

41.      In March 2018, Ms. Young was told via a phone call from Mr. Weber that the position had been filled with Joe Heinrich ("Mr. Heinrich"), a white male.  Mr. Heinrich was not previously a Transamerica employee and was less qualified than Ms. Young.  Additionally, Mr. Heinrich does not have an MBA.

42.       As Ms. Young began to work under Mr. Heinrich, she observed numerous deficiencies in his performance, and it became apparent to her that he was not as qualified.

43.      Ms. Young observed Mr. Heinrich log sales meetings into their internal system that did not actually happen.

44.      Mr. Heinrich claimed that he had met with 14 different agents that he had in fact not met with.

45.      Ms. Young reported these fraudulent entries to Mr. Heinrich's manager, Mr. Weber.

46.      Plaintiff was not informed if any investigation was conducted, she was not asked to participate in any investigation, but later, after Ms. Young filed this report and written complaints of discrimination, Transamerica accused Ms. Young of fraudulent conduct.

47.     On October 18, 2018, Ms. Young again applied for an RVP position, this time for the RVP of Southern California for the WFG division of Transamerica.  This RVP position has the ability to earn as much as $300,000 annually.

48.     Ms. Young received strong recommendations from her supervisor, Ms. Hodges, from Ms. Hodges' supervisor Taylor Gorgiyan, and from Ms. Gorgiyan's supervisor Mr. Kiefer.

49.     Mr. Kiefer personally recommended her to Mr. Coughlin, a key person in the hiring process.

50.     Ms. Young discussed the position with the hiring manager Tom Corbin ("Mr. Corbin") on October 26, 2018.

51.     She formally interviewed for the position on November 9, 2018 with Mr. Corbin.

52.     In November 2018, Ms. Young continued to observe the discriminatory treatment against Ms. Hodges, as compared to how similarly situated male AVP's employees were treated. Ms. Young was also subjected to discriminatory, condescending, and belittling behavior by Mr. Winchester.

53.     On November 6, 2018, Ms. Young wrote letter to Theresa Tafelski, Assistant Director of  Human Resources.

54.     In the letter dated November 6, 2018, Ms. Young made complaints about the mistreatment and discrimination against Ms. Hodges and complained about the toxic work environment created by Mr. Kriz and Mr. Winchester. She also expressed her concerns twice in her letter that she would receive retaliation for raising the complaints.

55.     Ms. Young was the most qualified person for the RVP Southern California position. She was the final candidate and was interviewed seven (7) times during October and December 2018, including interviews with Mr. Corbin.   Ms. Young then interviewed with other

members of Mr. Corbin's team and other managers, on November 19, 2018, November 30, 2018, and December 6, 2018, respectively.

56.     After learning of Ms. Young's complaint to Human Resources, Mr. Kiefer interfered with her promotion track.

57.     Mr. Kiefer discussed details of Ms. Young's Human Resources complaint to Mr. Corbin

58.     In direct conflict with Transamerica policies and procedures on promotions, Mr. Kiefer called Mr. Corbin, the hiring manager, and discussed Ms. Young's Human Resources complaint and alleged she had attendance issues. Pursuant to Transamerica's policies and procedures, Mr. Corbin was required to call Ms. Young's direct supervisor, Ms. Hodges, but failed to do so. Prior to this time and after seven (7) interviews, Mr. Corbin never expressed any concerns with Ms. Young about hiring her for the RVP position or her ability to perform the job. Prior to this time, Mr. Corbin actively moved Ms. Young's application for the RVP position through the interview process.

59.     After Mr. Kiefer's unsanctioned phone call to Mr. Corbin, he began avoiding inquiries from Ms. Young about her application.  Ms. Young was sent an email on January 3, 2019 informing her that the RVP position had been filled and she and that she was not selected for the position.  The contents of the email were false as the RVP position had in fact not been filled.

60.     Transamerica re-posted the RVP position on January 11, 2019.  On March 4, 2019, Cesar Diaz, a Hispanic male, was hired and began his employment March 4, 2019.  The next day, Transamerica terminated Ms. Young's employment on March 5, 2019.

**Ms. Young Discipline for Attendance Was Pretextual**

61.     Transamerica has a Paid Time Off ("PTO") policy which allows employees to

borrow up to 40 hours of PTO.

62.     The policy outlines disciplinary measures for attendance violations.

63.     Six (6) violations result in a verbal warning, seven (7) result in a written warning,

eight (8) result in a final warning, and nine (9) violations result in a discharge.

64.     Discipline for exceeding the 40 hours of borrowed PTO results in a written

warning.

65.     In summer 2017, shortly after Ms. Young started her employment, Mr. Kriz asked

Ms. Young if she was planning on taking a vacation.

66.     Ms. Young responded that she did not have enough PTO accrued yet.

67.     Mr. Kriz informed Ms. Young of their PTO policy that allows employees to

borrow PTO hours and carry a negative balance.

68.     Mr. Kriz told her she was allowed to take negative hours for vacation. However,

Ms. Young later learned that Mr. Kriz failed to follow the Transamerica policy and wrongfully

told Ms. Young that she was eligible for the vacation.  Pursuant to the Transamerica policy,

negative PTO is to be used only for emergency purposes.

69.     Reasonably relying and acting upon Mr. Kriz's advice, Ms. Young requested a

one-week vacation.

70.     Mr. Kriz was aware that this would result in a negative PTO balance.

71.     Mr. Kriz approved Mr. Young's request for time off.

72.     Subsequently, Ms. Young had a medical emergency on or about August 16, 2017.

73.     She was required to have a tooth extraction and was treated for an infection.

74.    Ms. Young made Transamerica aware of her medical issues.

75.    In order to receive treatment, Ms. Young had no other choice but to take additional PTO.

76.    At this time Ms. Young's PTO was still at a deficit.

77.    As a result, Ms. Young had a total PTO balance of negative 44 hours.

78.    She was not made aware at this time that the PTO she took would be an issue.

79.    Transamerica did not inform her that her negative PTO would affect her ability to receive a promotion or that it would make her ineligible for a raise.

**Ms. Young was Treated Differently Than Her Co-Workers at Transamerica**

80.    During her employment at Transamerica, Ms. Young observed a pattern of preferential and disparate treatment.

81.    Daniel Winders ("Mr. Winders") was an Internal Wholesaler at Transamerica from August 2017 to February 2019.

82.    Mr. Winders was similarly situated to Ms. Young in terms of their employment at Transamerica.

83.    Mr. Winders is a white male.

84.    Mr. Winders had severe attendance issues during his employment.

85.    On several occasions Mr. Winders arrived at work several hours late while smelling of alcohol.

86.    Mr. Winders' attendance issues were noticeable at the beginning of his employment.

87.    Mr. Winders did not receive a warning for several months.

88.    Despite these attendance issues, Mr. Winders received a $2,300 bonus.

89.     Ken Chambers ("Mr. Chambers"), an African-American male, was an Internal Wholesaler at Transamerica from July 2017 to August 2018.

90.     Mr. Chambers was similarly situated to Ms. Young in terms of their employment at Transamerica.

91.     While employed at Transamerica, Mr. Chambers was living in Colorado Springs.

92.     Mr. Chambers had a daily 3-hour round trip commute to work.

93.     Upon being hired at Transamerica, Mr. Chambers informed Transamerica that he would not be relocating to Denver.

94.     Mr. Chambers had a few late arrivals to work due to no fault of his own such as traffic and/or inclement weather.

95.     Despite having reasonable grounds for late arrivals, Mr. Chambers was placed on attendance counseling early in his employment.

96.     According to Transamerica's employee handbook, it is prohibited to consume alcohol on company premises or to conduct any business while under the influence of alcohol.

97.     There were multiple white male Internal Wholesalers that were caught drinking on the job.

98.     These individuals were similarly situated to Ms. Young in terms of their employment at Transamerica.

99.     These employees did not face discipline and one particular white male was caught drunk or drinking on the job three (3) separate times before terminated.

100.    In addition, a white male employee was repeatedly caught masturbating in the workplace numerous times.

101.    This employee was not discharged until the third incident.

102.     In Transamerica's sales department, there are approximately five (5) male employees for every one (1) female employee.

103.     During the time of Ms. Young's employment with Transamerica, only two (2) Internal Wholesalers were promoted out of the sales department. Both of these employees were white males.

104.     During Ms. Young's employment at Transamerica, there were about 11 RVP positions open.  All 11 of these positions were filled by white male candidates.

**Ms. Young Was Retaliated Against After Filing a Complaint of Discrimination with Human Resources**

105.     In Ms. Young's letter dated November 6, 2018, Ms. Young informed Human Resources about rampant discrimination at Transamerica and stated her clear opposition to discrimination and identified discriminatory treatment against women and persons of color.  Ms. Young also stated her opposition to Transamerica's discriminatory hiring practices.

106.     Ms. Young complained that Transamerica was only hiring external white male candidates.

107.     Ms. Young alleged that these candidates were less qualified than internal female candidates.

108.     Ms. Young submitted letters to both the Human Resources department and the president of Transamerica, opposing discriminatory practices against herself and other employees.

109.     Transamerica has an Equal Employment Opportunity ("EEO") policy that prohibits any discrimination or harassment on the basis of certain protected classes, including sex, race, and color.

110.    Transamerica also has a non-retaliation policy that states it prohibits retaliation against an employee for complaints regarding suspected harassment or discrimination.

111.    After filing the complaint, Ms. Young was retaliated against when Transamerica claimed Ms. Young's call logs were fraudulent.

112.    Ms. Young states they were given four (4) categories under which calls needs to be logged (each, a "Call" and collectively, "Calls"):

a.    Sales call
b.    Voicemail
c.    Service call
d.    Bad data

113.    A Call was considered a "sales call" if an employee spoke to either sales or marketing and spoke with an advisor.

114.    A Call was considered a "voicemail" if answered by voicemail, not if the employee actually left a voicemail message. Only after Ms. Young made written complaints of discrimination did Transamerica accuse Ms. Young of fraudulent behavior.  After the accusation of fraudulent behavior, Transamerica changed its policy on the definition of "voicemail" to mean a message left on the voicemail.

115.    A Call was considered a "service call" if no sales were discussed but the employee assisted the agent with another matter.

116.    A Call was considered "bad data" if the phone number was incorrect or the call was disconnected.

117.    As she was trained, when Ms. Young reached a voicemail, she labelled a Call as "voicemail."

118.    When Ms. Young reached a voicemail box that was not set up or was full, she would leave a comment stating that there was "no message left or mailbox full."

119.    Leaving comments indicating whether a voicemail had actually been left was common practice between her and her co-workers.

120.    Ms. Young used this method for the first 18 months of her employment without any correction or notification that she was engaging in "fraudulent behavior."

121.    After Ms. Young had filed a complaint with HR, Transamerica accused Ms. Young of fraudulently cataloging her Call outcomes.

122.    Transamerica did not have an issue with the way Ms. Young was categorizing her Calls before she filed a complaint with Human Resources.

123.    Transamerica asserts that Ms. Young was intentionally misrepresenting how many Calls she was making.

124.    Ms. Young did her best to comply Transamerica guidelines.

125.    Transamerica had very fuzzy guidelines concerning categories of Calls through most of Ms. Young's employment.

126.    Until late 2018, Transamerica did not have a definition for "sales call."

127.    When Mr. Winchester was hired in late 2018, he developed the definition for a "sales call".

128.    Transamerica implemented a policy change in February 2019 relating to Calls.

129.    Under this new policy, Transamerica began enforcing that Internal Wholesalers must make a minimum of 20 Calls per day.

130.    Call categorization did not impact Internal Wholesalers pay until this policy change; accordingly, Ms. Young had no incentive to manipulate her Call log data.

**Ms. Young was Terminated in Violation of Title VII**

131.    Ms. Young sent a letter to Transamerica's President, Mark Mullin ("Mr. Mullin"), a white male, on January 10, 2019.

132.    Ms. Young threatened a lawsuit for retaliation, harassment and defamation.

133.    Ms. Young cited her reassignment to Mr. Kriz's supervision and Mr. Kiefer's intervention in the promotion process as retaliation.

134.    On March 4, 2019, Ms. Young's legal counsel submitted a letter to Transamerica which alleged discrimination based on her protected class.

135.    On March 5, 2019, the day after the attorney's letter and 54 days after her written complaint to Mr. Mullin, Ms. Young's employment was terminated.

## IV.    CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**(Race/Color Discrimination in Violation of Title VII, 42 U.S.C. § 2000e-2 based on Disparate Treatment, Failure to Promote and Wrongful Termination)**

136.    Ms. Young incorporates by reference and re-alleges each and every necessary allegation and claim for relief with the same force and effect as if fully set forth herein.

137.    At all relevant times to the allegations in this Complaint, Ms. Young was an employee within the meaning of Title VII.

138.    Ms. Young is African-American/Black and a member of a protected class under Title VII.

139.    Ms. Young satisfactorily performed her position and job duties.

140.    Based on the above-described practices and acts, all of which are incorporated herein, Transamerica engaged in unlawful discrimination under Title VII based on Ms. Young's race and color of her skin color.

141.    Transamerica discriminated against Ms. Young on the basis of her race and skin color in violation of Title VII in the terms, conditions and privileges of her employment, including but not limited to failure to increase her salary, denying her opportunities, applying company policies differently towards her than those of similarly situated Caucasian/White employees.

142.    Transamerica discriminated against Ms. Young through disparate treatment by hiring non-African-American men, mostly white males, in violation of Title VII.

143.    Transamerica discriminated against Ms. Young by its failure to promote her and denying Ms. Young job opportunities and promotions on the basis of her race and skin color in violation of Title VII.

144.    The position for which Ms. Young applied, RVP of Southern California remained open after Transamerica notified Ms. Young it was filled.

145.    Transamerica terminated Ms. Young's employment on the basis of her race and skin color in violation of Title VII.

146.    The reasons for Transamerica's actions or omissions are pretextual, including statistical data, procedural irregularities, data manipulation and use of subjective criteria, among other illicit reasons.

147.    Transamerica is liable for the acts and omissions of its employees.  Transamerica, either directly or by and through its employees, discriminated against Ms. Young on the basis of her race and skin color in violation of Title VII causing Ms. Young to suffer injuries, loss of civil rights, mental and emotional harm.

148.    Transamerica's actions were intentional, malicious, willful and in reckless disregard of Ms. Young's rights.

149.   As a proximate result of Transamerica's unlawful and intentional conduct, Ms. Young has suffered, is now suffering, and will continue to suffer, loss of past and future wages, employment benefits, emotional distress, mental anguish, humiliation, loss of reputation and other economic and non-economic losses.

## SECOND CLAIM FOR RELIEF
### (Race/Color Discrimination in violation of 42 U.S.C § 1981 Disparate Treatment, Failure to Promote and Wrongful Termination)

150.   Ms. Young incorporates by reference and re-alleges each and every necessary allegation set forth in the preceding paragraphs with the same force and effect as if fully set forth herein.

151.   Ms. Young is African-American/Black citizen of the United States who has status under and is protected by the rights afforded to such citizens pursuant to 42 U.S.C. § 1981.

152.   Ms. Young was performing at or above the level of Transamerica's reasonable expectations.

153.   Transamerica discriminated against Ms. Young in the terms and conditions of her employment on the basis of race in violation of 42 U.S.C. § 1981, including but not limited to the following:

a.   Illegally treating Ms. Young disparately from white and non-African-American/Black employees to make and enforce contracts because of her race and skin color;

b.   Declining to offer Ms. Young the same employment opportunities and conditions of the employment contractual relationship as white and non-African-American/Black employees because of her race and skin color;

c.   Failing to permit Ms. Young to make and enforce contracts by failing to promote her in her employment because of her race and skin color;

d.      Permitting persons to modify her contract through intimidation by use of disparate enforcement of company policies and other discriminatory acts against Ms. Young because of her race and skin color in the workplace and demonstrating favoritism toward white and non-African-American/Black employees;

e.      Failing and refusing to take action to correct the effect of the discriminatory policies and practices complained of herein, and/or failing to follow any corrective action policies;

f.      Terminating the employment of Ms. Young because of her race and skin color; and;

g.      Permitting or approving any of the acts alleged in this Complaint resulting in the wrongful discharge of Ms. Young's employment.

154.    The acts alleged against Transamerica denied Ms. Young the full and equal benefit of the laws as enjoyed by white citizens and Transamerica engaged in acts impairing Ms. Young's rights protected under law.

155.    Transamerica's acts were intentional, malicious, and practiced with reckless indifference to Ms. Young's federally protected civil rights.

156.    Despite Ms. Young's qualifications and performance, she was discriminated against because of her race.

157.    As a proximate result of Transamerica's unlawful and intentional conduct, Ms. Young has suffered, is now suffering, and will continue to suffer loss of past and future wages, employment benefits, emotional distress, mental anguish, humiliation, loss of reputation and other economic and non-economic losses.

## THIRD CLAIM FOR RELIEF
### (Retaliation in Violation of Title VII, 42 U.S.C. § 2000e-3)

158.    Ms. Young incorporates by reference and re-alleges each and every necessary

allegation and claim for relief with the same force and effect as if fully set forth herein.

159.    At all relevant times to the allegations in this Complaint, Ms. Young was an

employee within the meaning of 42 U.S.C. § 2000e(f).

160.    At all relevant times to the allegations in this Complaint, Transamerica was an

employer within the meaning of and covered by 42 U.S.C. § 2000e(b).

161.    Ms. Young engaged in a protected opposition to unlawful employment practices

when she: (a) complained to management, both orally and in writing, that she was being treated

differently because of her race, skin color and/or sex; (b) when she opposed Transamerica's

discriminatory hiring practices; (c) when she opposed her failure to be promoted and the

pretextual reasons for her ineligibility to be promoted after she was recommended and had

completed the interview and hiring processes; (d) when she opposed discriminatory employment

practices of others because of their sex and race/color and (e) when her attorney wrote to

Transamerica and complained of discrimination.

162.    Ms. Young's November 6, 2018 letter to Human Resources, her January 10, 2019

letter to Mr. Mullin, and her attorney's letter dated March 4, 2019 to Transamerica were all in

opposition to discriminatory hiring and employment practices.

163.    Ms. Young was subjected to adverse action by her employer when she was

terminated on March 5, 2019.

164.    The termination of Ms. Young was directly related to her protected activity.

165.    Ms. Young was terminated on the very next day that her attorney submitted a

letter to Transamerica alleging discrimination based on her protected classes.

19

166.    Transamerica clearly retaliated against Ms. Young for opposing discriminatory practices in the workplace.

167.    Transamerica's acts were intentional, malicious, and practiced with reckless indifference to Ms. Young's federally protected civil rights.

168.    As a proximate result of Transamerica's unlawful and intentional conduct, Ms. Young has suffered, is now suffering, and will continue to suffer loss of past and future wages, employment benefits, emotional distress, mental anguish, humiliation, loss of reputation and other economic and non-economic losses.

### FOURTH CLAIM FOR RELIEF
**(Retaliation-Wrongful Employment Termination in Violation of 42 U.S.C. § 1981)**

169.    Ms. Young incorporates by reference and re-alleges each and every necessary allegation set forth in the preceding paragraphs with the same force and effect as if fully set forth herein.

170.    Ms. Young is African-American/Black citizen of the United States who has status under and is protected by the rights afforded to such citizens pursuant to 42 U.S.C. § 1981.

171.    Ms. Young was performing at or above the level of Transamerica's reasonable expectations.

172.    Transamerica discriminated against Ms. Young in the terms and conditions of her employment on the basis of race in violation of 42 U.S.C. § 1981, including but not limited to the following:

a.    Illegally terminating Ms. Young's employment and interfering with her right to make and enforce contracts because of her race and skin color and/or in retaliation of Ms. Young's complaints of discriminatory practices, as more fully set forth in this Complaint;

b.    Failing to permit Ms. Young to make and enforce contracts by failing to promote

her in her employment because of her race and skin color and/or in retaliation of Ms. Young's

complaints of discriminatory practices, as more fully set forth in this Complaint;

      c.      Terminating the employment of Ms. Young because of her race and skin color

and/or in retaliation of Ms. Young's complaints of discriminatory practices, as more fully set

forth in this Complaint; and

      d.      Permitting or approving any of the acts alleged in this Complaint resulting in the

wrongful discharge of Ms. Young's employment.

173.    The acts alleged against Transamerica denied Ms. Young the full and equal

benefit of the laws as enjoyed by white citizens and Transamerica engaged in acts impairing Ms.

Young's rights protected under law.

174.    Transamerica's acts were intentional, malicious, and practiced with reckless

indifference to Ms. Young's federally protected civil rights.

175.    Despite Ms. Young's qualifications and performance, she was discriminated

against because of her race.

176.    As a proximate result of Transamerica's unlawful and intentional conduct, Ms.

Young has suffered, is now suffering, and will continue to suffer loss of past and future wages,

employment benefits, emotional distress, mental anguish, humiliation, loss of reputation and

other economic and non-economic losses.

### FIFTH CLAIM FOR RELIEF
**(Sex Discrimination Under 42 U.S.C. § 2000e-2(a))**

177.    Ms. Young incorporates by reference and realleges each and every allegation

contained above, with the same force and effect as if fully set forth herein.

178.    Transamerica discriminated against Ms. Young in the terms and conditions of her

employment on the basis of her sex, in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1),

including, but not limited to, the following:

a.      Illegally treating Ms. Young disparately because she is female;

b.      Denying her employment opportunities and benefits and other terms and conditions of employment;

c.      Failing to take action to correct the effect of the discriminatory policies and practices complained of herein;

d.      Failing to provide Ms. Young the same employment opportunities as similarly situated employees;

e.      Failing to promote Ms. Young; and

f.      Permitting or approving any of the acts alleged in this Complaint resulting in the discriminatory termination of Ms. Young.

179.    Transamerica 's acts were intentional, malicious, and practiced with reckless indifference to Ms. Young's federally protected civil rights.

180.    At all times during her employment, Ms. Young was performing at or above the level of Transamerica's reasonable expectations.  Despite Ms. Young's qualifications and performance, she was discriminated against because of her sex.

181.    Transamerica is liable for the acts and omissions of its employees.  Transamerica, either directly or by and through its employees, discriminated against Ms. Young on the basis of her sex, wherein Ms. Young suffered the injuries mentioned herein.

182.    As a proximate result of Transamerica's unlawful and intentional conduct, Ms. Young has suffered, is now suffering, and will continue to suffer loss of past and future wages, employment benefits, emotional distress, mental anguish, humiliation, loss of reputation and other economic and non-economic losses.

**SIXTH CLAIM FOR RELIEF**
**(Violations of Colorado Anti-Discrimination Act 24-304-402)**

183.    Ms. Young incorporates by reference and realleges each and every allegation contained above, with the same force and effect as if fully set forth herein.

184.    Pursuant to 28 U.S.C. § 1367, this Court has jurisdiction over claims of discrimination asserted by Ms. Young based on state law.

185.    Ms. Young is African-American/Black female and as such member of protected classes pursuant to C.R.S. § 24-34-402(1)(a).

186.    At all times material hereto, Ms. Young is an employee within the meaning of C.R.S. § 24-34-401(2).

187.    At all times material hereto, Transamerica was the employer of Ms. Young within the meaning of C.R.S. § 24-34-401(3).

188.    Transamerica violated Ms. Young's civil rights afforded to her under C.R.S. § 24-34-402(1)(a) through discrimination against her in the matters of compensation, terms, conditions, or privileges of employment because of her race, skin color and sex.

189.    Transamerica violated Ms. Young's civil rights afforded to her under C.R.S. § 24-34-402(1)(a) through discrimination against her by the failure to promote her to the position of Regional Vice President because of her race, skin color and sex.

190.    Transamerica violated Ms. Young's civil rights afforded to her under C.R.S. § 24-34-402(1)(a) through discrimination against her by the wrongful discharge of her employment because of her race, skin color and sex.

191.    Transamerica violated Ms. Young's civil rights afforded to her under C.R.S. § 24-34-402(1)(e)(IV) through unlawful retaliation against her opposing unfair employment practices under C.R.S. § 24-34-402.

192.    At all times during her employment, Ms. Young was performing at or above the level of Transamerica's reasonable expectations.

193.    Transamerica is liable for the acts and omissions of its employees.  Transamerica, either directly or by and through its employees, discriminated against Ms. Young on the basis of her race, color, sex and unlawful retaliatory actions, wherein Ms. Young suffered the injuries mentioned herein.

194.    As a proximate result of Transamerica's unlawful and intentional conduct, Ms. Young has suffered, is now suffering, and will continue to suffer loss of past and future wages, employment benefits, emotional distress, mental anguish, humiliation, loss of reputation and other economic and non-economic losses.

**WHEREFORE**, Plaintiff Ms. Young respectfully requests this Court  grant the following relief:

a)      Declare that Transamerica's acts and practices complained of herein are in violation of Title VII, 42 U.S.C. § 1981, the laws of the United States of America and State of Colorado;

b)      Direct Transamerica to take affirmative steps as are necessary to ensure that the effects of these unlawful employment practices and tortious conduct are eliminated from its workplace;

c)      Award Ms. Young all damages to which she is entitled, including, but not limited to back pay, front pay, benefits, and reinstatement pursuant to applicable laws, including without limitation, 42 U.S.C. §§ 2000e-4-6, 2000e-8, 2000e-9 and C.R.S. § 24-34-405;

d)      Award compensatory and punitive damages against Transamerica pursuant to applicable statutes, including, without limitation under the Title VII, 42 U.S.C. § 1981 and all

remedies for damages or other relief available under 42 U.S.C. § 1981a and C.R.S. § 24-34-405;

   e)  An award for pre-judgment and post judgment interest to the fullest extent

permitted by laws; and

   f)  Grant Ms. Young such other equitable and further relief as to this Court appears

necessary and proper, including such relief available under 42 U.S.C. § 2000e-5(f) and 42 U.S.C.

§ 1981 and C.R.S. § 24-34-405.

### Demand for Jury Trial

   Plaintiff, Melanie H. Young, hereby demands a trial by jury.

ARCKEY & ASSOCIATES, LLC     PATRICK & KNOEBEL, LLC

*s/Thomas J. Arckey*        *s/Corey Knoebel*
Thomas J. Arckey         Corey Knoebel
Allison Derschang         Tyler Patrick
6465 Greenwood Plaza Blvd      2828 N. Speer Blvd
Suite 250            Suite 140
Centennial, CO  80111       Denver, CO 80211
tja@arlaw.us           corey@patrickandknoebel.com
aderschang@arlaw.us        tyler@patrickandknoebel.com
Attorneys for Plaintiff        Attorneys for Plaintiff